THE PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* SMITH, DISTRICT ATTORNEY OF BUTTE COUNTY, FOR THE USE AND BENEFIT OF SAID STATE AND OF THE COUNTY OF BUTTE *v.* LATTIMORE *et als.*

THE Controller of State is entrusted with the duty of making settlements with the County Treasurers for the moneys received by them and belonging to the State, and where that officer has settled with a County Treasurer and allowed him his commissions, the District Attorney of the county has no arbitrary power to disturb the settlement, at least without some special showing of facts. If the State is satisfied with the settlement, the District Attorney should be.

Where the Controller of State made a settlement with a County Treasurer and allowed him his commissions, which settlement has been acquiesced in for several years, the State cannot, in the absence of fraud or clear mistake, set aside the settlement and hold the Treasurer to a resettlement.

The question whether a District Attorney, without authority from the State or its officers, has power to bring suit in the name of the People on his relation, for money claimed to be due the State and county from a County Treasurer for commissions allowed him in his settlement with the Controller of State, raised but not decided.

APPEAL from the Fifteenth District.

Suit brought June, 1860, to recover of defendant, as late County Treasurer of Butte, and his sureties, $1,910.05 for commissions alleged to have been illegally retained by him during his term of office from October, 1855, to October, 1857. The complaint avers, that of this sum seven hundred and fifty-nine dollars and seventy-nine cents belong to the State, and the balance to Butte county.

Defendants demurred on the ground that there is a defect of parties plaintiff in this, that the suit is brought for the benefit of two distinct persons—the State and Butte county—and that a separate and not joint action lies; overruled.

The facts can be sufficiently inferred from the opinion of this Court, and from the instructions of the Court below, which were as follows, to wit:

" 1. That if defendant Lattimore retained commissions for receiving and disbursing any money received from his predecessor in office, the same was illegal, and plaintiff should recover the amount so retained.

" 2. That defendant had no right to commissions on any part of Butte county school funds, and that if they should find that the

said Lattimore has charged and retained any commission or per centage on said fund, it was illegal, and plaintiff should recover the same in this action against all of the defendants.

" 3. If Lattimore charged a commission on the amount of funds received by him during any quarter, and the amount not disbursed at that time was transferred by him to the next quarter, and he retained commissions on such balance again, such charge was illegal and plaintiff should recover such over-charge in this action against all of the defendants.

" 4. That if Lattimore entered upon the duties of County Treasurer as charged in the complaint, he was only entitled to charge and retain as commission for receiving and disbursing, three per cent. on $50,000, and two per cent. on the amount over $50,000 and under $100,000, and one per cent. on all sums over $100,000 of the amount so received and disbursed by him during the first year of his term of office, exclusive of the amount received from his predecessor, also exclusive of Butte county school fund ; and for the amount received and disbursed during the second year, or balance of his term as County Treasurer, he would be entitled to the same rate of commissions on corresponding amounts, exclusive of Butte county school fund and commissions of collecting officers, and that if said Lattimore charged three per cent., or any other per centage greater than as above stated, on the whole amount so received, or charged any commission on the commissions allowed by law to any of the collecting officers, such charge and retention is illegal, and he and his sureties are liable in this action to plaintiff for such overcharge or charges, as the case may be.

" That any settlement or settlements that Lattimore had with the Board of Supervisors of Butte county, or the Auditor of said county, or the Controller of State, is only *prima facie* evidence of the amount of money stated to have been accounted for, and the same may be inquired into, and that neither the Board of Supervisors, or the County Auditor, or the Controller of State, could allow on such settlement, or otherwise, any commission not allowed by law to the said Treasurer, and could not discharge the defendant from any liability that he might have incurred by reason of any over or illegal charges or commissions made and retained by him.

People *v.* Lattimore.

"That if the jury find for plaintiffs, they will find the aggregate amount due plaintiffs, with interest thereon at the rate of ten per cent. per annum from the fourteenth day of October, 1857, until the present time ; also how much of said sum is due the State fund, and how much is due the County Treasurer."

Defendants, in substance, asked the Court to instruct the jury that the account stated by the Controller of State between his department and Lattimore as County Treasurer, on settlement made according to the rules of that department, and the discharges given him, exonerated defendants from all demands on the part of the State, except in case of fraud, error or mistake ; that to make defendants liable, a demand must have been made on Lattimore for any deficit by some person having authority therefor ; that no one can make such demand for money due the State by a defaulting County Treasurer, except some one authorized by the State Controller ; that no one can make such demand for money belonging to a county, unless he has a warrant drawn by the County Auditor for the amount, except the successor in office of the Treasurer ; that in ascertaining the commissions to be allowed the Treasurer, the jury must consider the fiscal year as commencing July 1st, and the computation must be made upon the basis of annual settlements ; that Lattimore was entitled to receive three per cent. on the first $50,000 less the amount received from his predecessor, or received by him between October 1st, 1855 and July 1st, 1856, also on the first $50,000 received by him between July 1st, 1856, and July 1st, 1857 ; all of which instructions were refused.

Verdict that "defendants are indebted to the County and State aforesaid in the sum of $1,211.08, being $729.05 for the County and $482.03 for the State." Subsequently judgment was rendered on the verdict in favor of plaintiffs for the amount of the verdict.

A motion for new trial having been overruled, defendants appeal.

*H. O. & Wm. H. Beatty*, for Appellants.

I.   The action is not sustainable, because there are two suits for different plaintiffs having no joint cause of action united in one. The State and county are two separate corporations, or the State is

an independent sovereignty, and the county a political corporation within the State; and the State has no more interest in the county revenue than it has in the property or income of a private individual. Nor has the county, as a corporation, any interest in the State revenue.

It would be just as absurd to say in a complaint: " the State of California and the county of Butte sue A B, and for cause of complaint allege that said A B owes the State $1,000 for revenue collected and not paid over, and also owes the county $1,000 for revenue collected and not paid over, wherefore the State and county pray judgment for $2,000 ; as it would be to say John Doe and Richard Roe sue A B, and for cause of complaint say A B owes John Doe $1,000 for a certain horse sold and delivered, and owes Richard Roe $1,000 for a tract of land sold and conveyed to said A B, wherefore John Doe and Richard Roe pray judgment against said A B for $2,000."

The fact that the suit here is not in the name of the State or county, but is brought in the name of the obligees of the bond for the use of the State and for the use of the county, makes no difference, because in cases of this sort the Courts consider the party for whose benefit the suit is brought as the real party—the obligee of the bond being a mere nominal party—and hold that two beneficiaries, having distinct interests (not joint) cannot recover in one action by suing in the name of the obligee of the bond, a nominal party. (*Montgomery* v. *Commonwealth*, 1 Munroe [Ky.] 197 ; *Wolverton et al.* v. *The Commonwealth*, 7 Serg. & Rawle, 272 ; *Campbell et al.* v. *The Commonwealth*, 8 Id. 417 ; *Brownfield* v. *The Commonwealth*, 13 Id. 236 ; *Dunn* v. *The Commonwealth*, 14 Id. 431 ; *Lynch* v. *The Commonwealth*, 16 Id. 368.)

There is nothing in our Practice Act altering this rule. Indeed if there is any alteration, it tends the other way; the rule which requires every action to be brought in the name of the real party in interest, would seem to require that the name of the obligees in such a bond should be admitted as a party to the suit. The suit should be in the name of " *Butte County* v. *Lattimore et als.*," reciting in the body of the complaint the facts which would enable the county to sue on a bond given to " The People."

II. The action of the State Controller in settling with Lattimore and giving him a full acquittance, where no mistake or fraud is alleged to have occurred in the settlement, and the acquiescence of the State for years in that settlement, must at least operate as a discharge of the sureties, or in other words, an estoppel from proceeding against the sureties. (Wood's Dig. 95–7, art. 330, etc.)

III. After a regular discharge by the Controller of State, no person has a right to question the correctness of that discharge, or to demand or sue for any overcharge of commissions, except it be by express authority of the State, or it be done by some officer of the State having general authority to bring such suits, and then such officer is the Controller. (Wood's Dig. *supra.*)

IV. Lattimore only retained such commissions as he was entitled to retain, or at least he was entitled to retain a larger amount of commissions than the instructions to the jury allowed.

The law, prior to 1855, gave the County Treasurer three per cent. on all sums collected and actually disbursed by him, or paid into the State treasury. (Stat. 1854, 114.)

In 1855 the Legislature passed an amendment to the revenue law altering the compensation of various officers. (Stat. 1855, 121.) The law says the Treasurer shall have three per cent. on the first $50,000, two per cent. on all over $50,000, etc. The law also provides that the Treasurer shall settle twice per annum, and shall hold his office two years.

The question is, does " the first $50,000 " refer to that amount first collected within each period of settlement, that is within each six months, to that amount collected annually, or to the first $50,000 collected during the whole two years.

The language of the statute is indefinite. The State Controllers, from 1855 down to the present time, have interpreted the law to mean that each Treasurer shall have three per cent. on all amounts of money paid in at their semi-annual settlement not exceeding $50,000. In other words, if a Treasurer pays into the State treasury $50,000 on the first of January, after going into office, he gets three per cent. on that, and if on the first of July he pays $50,000 again, he gets three per cent. on that. But the Court below decides that, in such case, the Treasurer would only be enti-

tléd to two per cent. on the July payment; and at the next January settlement, when a new year commences, the Treasurer would be entitled to three per cent. on his $50,000.

This position is not sustainable. There is nothing in the law which connects the rate of the Treasurer's commissions with the annual collections. The law provides for the collection and payment of taxes semi-annually. That is the only period mentioned in connection with the compensation for disbursement, etc., of the money received by the County Treasurer. It would be more reasonable to say that each County Treasurer should have a commission of three per cent. on the first $50,000, or at each settlement, or else that he should have it only on the first $50,000 during his whole term.

The Controller has acted on one interpretation for a number of years, and we think the uniform action of the State Controller is in such case entitled to great weight as authority, and his action should not be reversed unless the case be clear.

. *Jos. E. N. Lewis*, for Respondent.

This action is predicated upon this theory : that defendant Lattimore retained and converted a portion of the Butte county school fund as commissions ; that in one instance at least he charged commissions on the general fund for one quarter, and then on the same amount brought forward charged commissions a second time ; that during a part of said time he charged commissions on the net amount paid over to him, also on the percentage that was allowed the Collector, Recorder, etc., that were never received by him ; that he charged three per cent. on the whole sums received by him during the first and second years, when the amount received by him in each year was more than $50,000.

I.    There is but one suit in the name of the People, suing to recover a certain amount by reason of the illegal conversion of certain trust funds. When Lattimore entered upon the duties of Treasurer, he assumed a trust such as an executor or administrator, or any other trustee, whereby he was to discharge the duties of this trust according to law. It was his duty, when he surrendered his office, to have paid over all moneys that he had not legally dis-

People *v.* Lattimore.

bursed, to his successor.   This money was a trust fund in which the State and county had a common though unequal interest.   The People are trustees of an express trust within the meaning of section six of the Practice Act.   They are the parties with whom the contract is made for the use and benefit of other parties.   (*State v. Moore*, 19 Mo. 369;  2 Bennett, 369;  *Harney, Adm'r.* v. *Dutcher & Dutcher*, 15 Mo. 91;  *State* v. *Ruggles*, 20 Id. 5.)

II.   The officer of the Government cannot allow any greater commissions, or any commissions other than those designated by law.   If he does, it is fraud *per se* upon the Government.   If the Government is bound by the acts of its agent, in a matter where the agent has no discretion, and sureties are released from their liability on official bonds, the door to fraud is thrown wide open.   When the law leaves no discretion as to compensation but the rate of commission, and on what commission shall be charged are fixed, neither time nor the action of the Controller ought to protect the principal or his sureties from any liability arising from such charges or commissions.   A State is never included in the Statute of Limitations, unless expressly included.   Neither is *laches* imputable to the Government.   (*State* v. *Parker*, 7 Mo. 194;  *U. S.* v. *Kirkpatrick*, 9 Whea. 755;  *Lindsey* v. *Miller*, 6 Pet. 666;  *People* v. *Gilbert*, 18 Jones, 227;  *Stoughton* v. *Baker*, 4 Miss. 522;  *Marion County* v. *Hewitt*, 15 Mo. 604.)

III.   The point that Lattimore being discharged by the Controller's receipt, no person has a right to demand or sue for any overcharges of commission, except it be by express authority of the State, or it be done by some officer of the State having general authority to bring such suits, and then such officer is the Controller, if good, could not be urged as a defense to this action on its merits.

This suit is brought in the name of the proper party, to wit:— The People, by its proper law officer.   If the District Attorney had no authority to bring this suit for the reason that he had not been authorized by the proper financial agent of Government, that defect can only be taken advantage of on motion to dismiss the same, as where an attorney had instituted a suit without authority.   It cannot be pressed on trial.   (17 Cal. 431.)

The Controller might be the person to order such investigation

and suit as to an acting Treasurer, but this is not that case. The case at bar is against an ex-Treasurer for refusing to pay over all the revenue that was received by him during his term of office, and upon such failure it was the duty of the District Attorney to sue for such defalcation, and not the Controller. (Act of April 29th, 1859, sec. 7.)

IV. The fourth assignment is that the instructions of the Court were wrong as to the percentage Lattimore was entitled to.

The theory of the respondent is, that under section three of the Act of April 1st, 1855, (Wood's Dig. 368) that for the first $50,000 which the Treasurer receives and disburses, he is entitled to three per cent., and that for all over that, which he receives and disburses during his term of office, he is entitled to two and one per cent., according to the amount so received and disbursed. But the defendant charged three per cent. commissions on the gross amount of all moneys that were collected by the collecting officers, including their fees, which were never received or disbursed by him. In charging his commissions upon funds, he divided the gross net funds into the various State and county funds, and then charged his commissions upon each fund separately. The Treasurer should first have charged the gross net fund with his commissions, and have divided the fund into State and county funds. This commission would be upon the gross net receipts, and not upon each individual fund.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This suit is thus brought to recover of the first named defendant and his sureties certain moneys received by him as County Treasurer of Butte county—the complaint claiming a given proportion of those moneys as due the State, and another stated proportion as due the county. The complaint charges that the principal defendant refused to pay these moneys to his successor in office. Whether anything is due, depends upon a question of the amount of commissions the Treasurer was entitled to retain.

It seems that the defendant settled with the Controller of State, and had his claim allowed for commissions, etc., and that no com-

plaint has been made of that settlement for several years.   No express authority to institute this suit on the part of the State or any of its officers, except the District Attorney bringing this action, has been shown.   If we concede that this suit is properly brought in the name of the people, on the relation of the District Attorney, for the money due the county as well as " for the money due the State," and that no authority need be shown from the State or its general officers for the bringing of the suit, still, even with these concessions, it is difficult to hold that this settlement and adjustment of this account, and this long acquiescence on the part of the State Officers, is not, in the absence of any showing of fraud or clear mistake, a good answer to this demand.   If this be not so, it would seem to follow that no officer would ever be safe in making a settlement with the State Controller or Treasurer; for years afterwards, any District Attorney might bring his suit and set aside the settlement, and hold the officer to a resettlement of the matters of the account.   We think this is not admissible; that if the State is satisfied in respect to this matter, the District Attorney should be; and that it would introduce great confusion to hold that an arbitrary power resided in the District Attorney to unsettle the accounts of a County Treasurer with the State Department, and recover upon the basis of what he may think or show the account, as properly settled, would represent.   It is not, by any means, clear that the account was not properly settled by the Controller; but we think it better to hold that that Department is intrusted with the office of making these settlements with the County Treasurer, and that when the settlement is once made, it does not rest with the District Attorney to disturb it, at least, without some special showing of facts not presented here.

Judgment reversed and cause remanded.